UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID M. MOSLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO.   18-08201** |
| **ANDREW SAUL, COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION** | **SECTION: "J" (4)** |

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied David Mosley's ("Mosley") claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### I.      Factual Summary

Mosley is a fifty-three (53) year old male who last worked as a as a tug boat captain. Rec doc. 10-2, Tr. 12. He complains that his disability began on March 20, 2014 (original onset date) and then on February 9, 2015 (amended onset date), because of lumbar disc, severe wrist pain despite many surgeries, cervical spondylosis, thoracic spondylosis and avascular necrosis in the hips.  Rec. doc. 12. He alleges that he suffered an injury while steering a boat with difficult steering equipment. Rec. doc. 487. On November 30, 2015, Mosley filed an application for Title II disability and disability insurance benefits. The claim was initially denied on March 16, 2016. Rec. doc. 10-2. Mosley thereafter submitted a request for hearing on May 13, 2016, before Administrative Law Judge Thomas G. Henderson. The hearing took place on June 6, 2017, and on August 28, 2017, the ALJ found that Mosley has not been under a disability from February 9,

2015 through the date of the decision. Rec. doc. 10-2.

In reaching the decision, the ALJ found that Mosley met the insured status requirements through December 31, 2019. Finding 1, Rec. doc. 10-2. Tr. 18. The ALJ also found that Mosley has not engaged in substantial gainful activity since February 9, 2015, the alleged onset date. Finding 2, Rec. doc. 10-2, p. 18. The ALJ further found that Mosley has left upper extremity osteoarthritis and lumbar degenerative disc disease which are severe impairments. Finding 3, Rec. doc. 10-2, Tr. 18. The ALJ found that Mosley does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Finding 4, Rec. doc. 10-2, Tr. 19. The ALJ further found that Mosley has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with occasional postural and occasional left upper extremity handling and fingering. Finding 5, Rec. doc. 10-2, Tr. 19.

In Findings 6-8, the ALJ found that Mosley was unable to work in his past job, is an individual closely approaching advanced age, has a limited education and is able to communicate in English. Findings 6-8, Rec. doc. 10-2, Tr. 26. In Finding 9, the ALJ found that the transferability of job skills is not material to a determination of disability because the Medical-Vocational Rules Framework supported a finding that Mosley was "not disabled" even if he had transferable skills. Finding 9, *Id.* Finally, the ALJ concluded that considering Mosley's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform such as representative occupations. housekeeping and routers. Finding 10, *Id.*

After being denied administratively, Mosley filed a complaint in this court challenging the denial of his application for benefits. Rec. doc. 1. Mosley contends that the ALJ's opinion is

2

not based upon substantial evidence because he meets Listing Level 1.07. Rec. doc. 12, p. 7. He also contends that the ALJ's Residual Functional Capacity light-work finding is not based upon substantial evidence. Rec. doc. 12, p. 9. The Commissioner contends that (1) the ALJ properly assessed Mosley's Impairments at Step Three and (2) the ALJ properly assessed Plaintiff's RFC. *See* Rec. doc. 16.

## II. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

### III. <u>Analysis</u>

#### a. *Listing Level 1.07 and Substantial Evidence*

Mosley contends that the ALJ erred when he concluded that Mosley did not meet Listing Level 1.07. Mosley contends that although his fracture has unionized, which 1.07 prohibits, he is

still undergoing surgical management and possibly needs additional treatment for a stimulator implant. Rec. doc. 12, p. 8. Mosley points out that he has had three (3) different surgeries of the wrist which his doctor deemed not functional in any working capacity. *Id.* As a result, he contends that the ALJ erred when he concluded that his fractured wrist did not meet Listing Level 1.07.

The Commissioner contends that the ALJ's finding that Mosley did not meet Listing Level 1.07 is based upon substantial evidence. The Commissioner contends that Mosley underwent several left wrist surgeries to lessen the pain from the original wrist sprain and obtained full functioning after each surgery as demonstrated in his performing of substantial gainful activity post-surgeries. Rec. doc. 16, p. 4.

Listing 1.07 applies to a "[f]racture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. § 404, Subpt. P, App. 1, 1.07.

The ALJ found that Mosley's condition does not meet Listing 1.07 for fractures of an upper extremity. He noted that the Listing provides that a fracture of an upper extremity must have nonunion of the shaft of the humerus, radius, or ulna, under continuing surgical management as defined in 1.00M, directed toward restoration of functional use of the extremity and the function was not restored or expected to be restored within twelve (12) months of onset. Rec. doc. 10-2, Tr. 19. The ALJ held that Mosley has not been so limited for the allotted period of time as contemplated under the listing with any functional impairment being addressed under the residual functional capacity. *Id.*

The evidence of record shows that Mosley had an osteotomy with hardware in 2014 and

was scheduled for a fusion of the wrist. On November 20, 2014, Mosley was seen by Dr. Claude Williams. During this visit it was noted that his left wrist exam revealed a well-healed surgical scar. Rec. doc. 10-9, p. 484. It was noted that there was minimal residual swelling of the left wrist compared to the right, no tenderness and the Watson scaphoid shift test was stable. *Id.* The doctor noted that Mosley was able to make a strong, tight fist and to fully extend all digits. *Id.* There was however limited dorsiflexion 35 degrees, palmar flexion 45 degrees. *Id.* There was near full supination (rotation) and pronation (natural side to side movement). *Id.*

During the visit, Mosley's left wrist exam revealed a dorsal incision with less compartment. *Id.* While some pain was also noted at the radial styloid with passive thumb flexion, Mosley had full flexion and extension was possible of all digits. *Id.* Dr. Williams further noted Mosley's strong grip, without swelling of the digits or catching. *Id.*

Additional medical records show that in November 2015, Mosley underwent the installation of a Synthes dorsal wrist fusion locking plate which was removed in October 2016. Rec. doc. 10-9, p. 438. Mosley concedes that his fracture has unionized. Rec. doc. 12, p. 8. He does, however, contend that he is still undergoing surgical management and possibly needed additional treatment for a stimulator or implant. *Id.*

On February 9, 2017, Mosley was seen at the Southern Orthopedic Specialist. Rec. doc. 10-9, p. 550. The examination of his left wrist revealed a well-healed dorsal incision with no tenderness across the dorsum of the wrist. *Id.* No significant swelling was noted but mild tenderness was present at the base of the second metacarpal at carpometacarpal joint with more significant tenderness at the first dorsal extensor. *Id.* Dr. Williams again noted some pain at radial styloid with passive thumb flexion, but Mosley had full flexion and extension of all digits, strong grip, and was without swelling or catching. *Id.*

The evidence of record also shows that the year before the alleged onset date of his disability and the year in which he had two surgeries, he earned $114,869.03. In 2015, while his earnings decreased, he still earned $79,993.07 in income past the disability onset date. Rec. doc. 10-5, p. 142. This means, even with his wrist fracture, Mosley was still able to sustain gainful employment. Moreover, Listing Level 1.07 specifically provides that in order for that categorization to be applicable there must be a nonunion of the fracture. In this case, while Mosley has had difficulties with his wrist as demonstrated by his medical history, the ALJ's finding that he does not meet the criteria in Listing Level 1.07 as his fracture has unionized and he has good functioning despite the surgeries is based upon substantial evidence.

### b. *Residual Functional Capacity for Light Work*

Mosley next contends that the ALJ's finding that he has a residual functional capacity for light work is not based upon substantial evidence. Mosley contends that the evidence shows that he is far more limited than found by the ALJ because he experiences severe pain due to his herniated lumbar disc disease, cervical spondylosis, hip avascular necrosis and left wrist osteoarthritis. Rec. doc. 12, p. 10-11. Mosley states that his pain affects his ability to stand, walk, and perform many exertional activities, which are all documented by objective testing such as MRIs and x-rays, are consistent with Mosley's own medical findings. *Id.*

Mosley contends that his pain is chronic in his neck and back, and that he experiences severe bilateral hand pain, even though his treating physician limited his treatment to his left hand due to Worker's Compensation constraints. *Id.* at p. 11. Mosley also contends that the ALJ improperly gave great weight to the State agency consultant, Dr. Sauer, a family physician, when Dr. Williams is an orthopedist with special training to make such an assessment. *Id.* Mosley suggests that a proper review of his records would preclude all work activity since the treating

source agreed that Mosley cannot perform even sedentary work, the lowest exertional level work recognized by the Commissioner. *Id.* Mosley contends that the records show that he is far more limited than what the ALJ opined and that it is unreasonable to think that an individual who has multiple lumber disk herniations, avascular necrosis in both hips, and severe radiating pain could stand and walk six (6) hours in an eight-hour day. *Id.* at p. 12.

Mosley also contends that because he has worked for over thirty years with high earnings, excellent work history, who neither exaggerated the extent of his physical difficulties nor ever exhibited no desire to work, that he is entitled to enhanced credibility regarding his inability to work, and cited to opinions from the Eighth, Sixth, Third and Second Circuits. *See, e.g., O'Donnell v. Barnhart*, 318 F. 3d 811, 817 (8th Cir. 2003); *Felisky v. Bowen,* 33 F. 3d 1027, 1041 (6th Cir. 1994); *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983); *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979).

In contrast, the Commissioner contends that while Mosley underwent three (3) wrist surgeries for his complaints of wrist pain, the record documents that his left wrist functioned in a manner warranting no more restrictive limitations than that the ALJ's assessed limitation of no more than occasional left upper extremity handling and fingering. Rec. doc. 16, p. 5. (citing Rec. Doc. 10-2, Tr. 19. The Commissioner points out that the Social Security Act is not satisfied merely because Mosley cannot work without some pain or discomfort. *Id.* The Commissioner contends, therefore, that the ALJ's Residual Functional Capacity finding is based upon substantial evidence.

After reviewing the record, the ALJ found that Mosley has the residual functional capacity to perform light work except with occasional postural, and occasional left upper extremity handling and fingering. Finding 5, Rec. doc. 10-2, Tr. 19. The ALJ after considering Mosley's testimony and the record evidence, found that Mosley's claimant's medically

determinable impairments could reasonably be expected to produce the symptoms but that Mosley's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely inconsistent with the medical evidence. Rec. doc. 10-2, Tr. 21. The ALJ found that the statements have been found to affect Mosley's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. *Id.*

The ALJ noted Mosley's contention that he is unable to put pressure on his left wrist and that it is not functioning but that the evidence revealed that after several surgeries and a diagnosis of osteoarthritis in his left upper extremity he had full flexion and extension of all digits with no evidence of swelling or catching. *Id.* The ALJ noted that Mosley's had a strong grip and while he claims side effects from medication, he did not report to his doctor that he was experiencing side effects. Id. The ALJ noted that Dr. Williams, Mosley's hand surgeon concluded that Mosley did not have the ability to work a full-time schedule because he had problems standing, walking and sitting even though he only treated him for the hand and wrist. *Id.*

As a result, the ALJ gave little weight to Dr. Williams' opinion because they were inconsistent with Mosley's examination that showed left upper extremity with strong grip, no swelling, full flexion and extension. *Id.* The ALJ further noted that Dr. Williams based his opinion on Mosley's subjective complainants and self-reported symptoms and found that the left upper extremity limitations had nothing to do with a sit/stand option. The ALJ, therefore, gave greater weight to Dr. Sauer's finding that Mosley could perform light work with occasional fingering and gripping on left. *Id.* at Tr. 25.

The ALJ noted Mosley's statement that his treating physician informed him he needs back surgery. *Id.* Nonetheless, the ALJ went on to find that the medical records, which do not show any sort of surgical necessity, do not support such an allegation, but instead show that Mosley

9

underwent conservative treatment of injection and nerve blocking and, from this conservative treatment, Mosley, himself, reported relief from radio frequency ablation B2F, 43-45, and significant relief with pain medication. Id. The ALJ noted Mosley testified that he lays around the house all day, grocery shops with his wife, and told his physician he was able to do yard work and has experienced improved functioning since his latest surgery. Id. The ALJ, after considering this evidence, found that Mosley's functionality did not support a finding of disability.

Regarding Mosley's complaints of low back and radicular pain into his right thigh and right big toe, the ALJ noted Mosley's pain was fairly controlled with prescribed medications and abated sixty percent (60%). Rec. doc. 10-2, Tr. 24 The ALJ further noted that upon physical examination, Mosley complained of bilateral pain at L4-S1, that he had a normal gait and that he could heel/toe walk and squat without difficulty. *Id.* During the exam, Mosley had full flexion to ninety percent (90%), however, his extension was limited and he also experienced pain with extension. *Id.* Lateral rotation of his lumbar facet was worse on the right than the left but his left and right extremity were normal. The AJ noted that his final diagnoses was lumbar spondylosis, degeneration of lumbar disc, lumbar facet arthropathy, chronic pain due to trauma, sacroiliitis and long-term use of other medication. *Id.*

The ALJ noted that on April 14, 2015, Mosley experienced fifty percent (50%) relief from radio frequency ablation and seventy percent (70%) pain relief with pain medications and sleeping fairly. Mosley's pain medication included Norco 10mg-325 four (4) times a day, or as needed. *Id.* He also noted that Mosley reported increased activity to include yard work, however, his pain returned in the mid to lower back and that Mosley was considering a neurosurgeon. *Id.*

By February 2016, according to the ALJ, Mosley's physical examination revealed normal cervical range of motion despite tenderness and his lumbar examination revealed antalgic gait (an

abnormal gait typically an indication of pain). *Id.* On straight leg raising examination, the Faber's test revealed limitation and pain with extension. *Id.* at Tr. 24-25. Mosley had positive provocative results for lumbar facet with lateral rotation and extension. *Id.* at Tr. 25. Mosley also had a positive GAENSLEN, a test used to determine chronic inflammation in the lumbar region including the sacroiliac joint. *Id.* at. Tr. 25. Mosley's treating physician, Dr. Williams, instructed him to continue taking medication for his pain including Norco and Zanaflex, and also encouraged him to continue regular home exercise and Mosley reported adequate pain relief up to sixty percent (60%). *Id.*

In November 2016, Mosley reported worsening pain due to an ear infection and radiating neck pain into his mid-back area with his pain at 7 out of 10. *Id.* He again reported that the pain medication relieved his pain up to seventy percent and there was no change in his physical exam. *Id.* In March 2017, his pain management treating doctor, Dr. Hijaz, decreased the frequency of the pain medication Norco from four (4) times daily to three (3) times a day, Mosley reported improved physical activity with better functionality and eighty percent (80%) pain relief. *Id.* The ALJ noted that his pain at that time was 5 out of 10. *Id.*

As a result, the ALJ found that Mosley's degenerative disc disease of the lumbar spine, non-severe degenerative disc disease of the thoracic and cervical spine and improvement of pain with long term opiate usage and abdominal hernia repair reported improved pain with long term opiate usage and abdominal hernia repair. *Id.* The ALJ concluded that Mosley could lift twenty pounds (20lbs) occasionally and ten pounds (10lbs) frequently, stand/walk six (6) hours in an eight-hour workday and sit six (6) hours in an eight-hour workday. *Id.* The ALJ noted, based upon Mosley's MRI and x-rays, that Mosley had degenerative disc disease, which limited him to occasional postural movements overall. Id. The ALJ, therefore, found that Mosley could not work

as a Tug Boat Captain. *Id.* at Tr. 26.

Thereafter, using the medical vocational rules, the ALJ found that Mosley was not disabled. *Id.* The ALJ relying upon the vocal expert found Mosley had additional limitations that erode the unskilled light occupational base but concluded that, given all the factors, Mosley was able to perform work in housekeeping or as a router (a scheduling clerk for logistics administration in road transport and shipping). *Id.* at Tr. 27.

Mosley does not dispute the hypothetical incorporated all the limitations "recognized" nor does he dispute that Dr. Williams treated him only for the left hand and wrist. Therefore, while Dr. Williams concluded that Mosley could not perform even sedentary work, there is no evidence of record indicating that he examined or reviewed Mosley's medical records or diagnostic test of the lumbar spine, and, thus, is entitled to little weight. *Id.* at Tr. 25.

Additionally, Dr. Williams opined that Mosley's limitations are more restrictive than the ALJ's assessed Residual Functional Capacity in a check-box form, which likewise is not entitled to controlling weight because it was not supported by the record including Dr. Williams' own treatment records of good wrist function despite Mosley's complaints of pain. The records show that Dr. Williams' records further indicated that on examination on February 13, 2015, that Mosley was able to make a strong tight fist and fully extend all digits. His wrist motion is limited dorsiflexion, 35 degrees, palmar flexion 45 degrees and near full supination and pronation. Rec. doc. 10-9, p. 487. Dr. Williams released him to return to work, but recommended he avoid using his left wrist for lifting or gripping activities. *Id.*

One month later he returned to the doctor for the wrist pain and his motion and extension and flexion remained the same with the ability to extend all digits. *Id.* at p. 493. On November 23, 2015, Mosley returned for examination by Dr. Williams after having had the wrist surgery the

week earlier. Id. at p. 510. He was given exercises for increasing the mobility and range of motion and Dr. Williams advised him to not grip or lift and to return the next week for an additional evaluation. Id. By June 23, 2016, on another return visit, Dr. Williams noted that Mosley was able to make a full tight fist and extend his hand at all digits. Id. at p. 528. On February 9, 2017, he once again returned to Dr. Williams, who noted pain limitations but determined Mosley still had full flexion and extension in all digits. Id. at p. 550.

The records of Dr. Hijazi, the pain specialist, noted that Mosley lumbar spine had no inflammation, with facet trigger issues from L4 to S1. Id. at p. 387-88. Mosley's neck examinations were normal. Id. at p. 389-310. Dr. Hijazi prescribed him pain medications. Id. While Mosley had degenerative changes in his spine, he stated his pain was well managed with medication and he continued to work throughout the entirety of his pain management therapy. See, e.g., Id. at p. 393. The Court finally notes that while there is no orthopedic treatment for his cervical, lumbar, and facet issues; there is evidence of pain management for those conditions.

Having considered the medicals and ALJ's opinion, the Court finds that the ALJ's decision to give weight to the State Agency reviewer's opinion is supported by substantial evidence and reliance upon the vocational expert's opinion that there are jobs in enough numbers for Mosley to do is likewise supported by the evidence.

Finally, the Court finds the ALJ was not required to give enhanced credibility due to his extensive work history and his claim of inability to work because the standard has not been adopted by the Fifth Circuit. *McGee v. Astrue*, 2012 WL 7456174 at *8-9 (W.D.La. 2012). As such, it is the recommendation of this Court that the ALJ's opinion be affirmed.

## IV. Recommendation

It is the **RECOMMENDED** that the ALJ's decision denying David M. Mosley's claim

for Disability Insurance Benefits and Title II Disability be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)[1].

New Orleans, Louisiana, this 11th day of September 2019

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.